IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEON GODFREY,                        )
                                     )   Civil Action No. 05-1106
                Petitioner           )
                                     )   Judge Gary L. Lancaster/
        vs.                          )   Magistrate Judge Lisa
                                     )   Pupo Lenihan
GEORGE N. PATRICK, Superintendent    )
of the State Correctional            )
Institution at Houtzdale, JEFFREY    )
BEARD, Secretary, Pennsylvania       )
Department of Corrections, and       )
THE ATTORNEY GENERAL OF              )
PENNSYLVANIA, and THE DISTRICT       )
ATTORNEY OF ALLEGHENY COUNTY,        )
                                     )
                Respondents          )
                                     )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the habeas petition
(Dkt. # 1) filed pursuant to 28 U.S.C. § 2254 be denied and that
a certificate of appealability be denied.

### REPORT

Leon Godfrey, having been convicted of, inter alia, first
degree murder, is now serving a life sentence and has brought a
habeas petition.  He has privately retained counsel.  In that
petition he raised two claims: 1) that his trial counsel at his
second trial was ineffective for failing to raise the issue that
the second trial violated Petitioner's double jeopardy rights
after the first trial had ended in a mistrial and 2) that all

prior counsel were ineffective for failing to raise the issue that the accomplice liability jury instruction given by the trial court violated Petitioner's due process rights.  Despite the fact that his conviction became final on July 31, 2000, he did not file the instant habeas petition until August 9, 2005.  Because his petition is time barred, it should be denied as such. Alternatively, because he denied the state courts a full and complete opportunity to address the two federal claims he raises now, by failing to raise the first federal claim in his appeal to the Superior Court and by failing to raise the second federal claim at all, he procedurally defaulted these claims. Furthermore, because he fails to argue cause and prejudice and fails to demonstrate a miscarriage of justice, his petition should be dismissed based on his procedural default.

### A.  Relevant Factual and Procedural History

The Superior Court in the direct appeal of the second trial adopted the factual recitation of the crimes as recounted by the Trial Court.  Petitioner concedes that he "accepts this recitation of the facts and evidence as being supported by the evidence, when viewed in the light most favorable to the verdict winner, the Commonwealth. Accordingly, petitioner incorporates that recitation here [in the habeas petition] by reference, as stating the factual background necessary to place the issues raised herein in proper context." Doc. 1 at ¶ 11.

Those facts reveal that Petitioner was beaten up by the murder victim on the evening of November 7, 1993.  On November 8, 1993, around 1:20 a.m., two masked gunmen forced their way into the victim's home, asked for the victim and was told where he was and they ran to his bedroom and shot him several times and then ran from the home.  Police were called almost immediately and as they were heading toward the scene, they were almost run off the road by a speeding truck.  Believing that this truck may have been involved in the shooting, the police gave chase.  The three occupants of the car, one of whom was Petitioner, were eventually apprehended and the police also retrieved three guns that were in the possession of the three suspects. Subsequent bullet tests revealed that these guns were the ones used to kill the victim.

Witnesses to the crime described the two masked shooters as one was wearing a white and black checkered vest jacket and the second was wearing a dark color, possibly blue and white checkered jacket.  When Petitioner was arrested he was wearing a black and white checkered vest coat which appeared to have blood stains on it.  Of the other two arrested, one had a dark blue and white checkered coat and the third had a purple leather jacket.

Petitioner was charged with the murder of the victim as well as other crimes.  The first trial ended in a mistrial when the prosecutor mentioned in his closing that Petitioner did not call his brother as a witness.  A retrial was had by Petitioner before

the same judge as his first trial and by the same prosecutor.
The jury found Petitioner guilty.  The same counsel who
represented Petitioner at trial also represented him on appeal.
On appeal to the Superior Court the sole issue raised was the
sufficiency of the evidence to convict Petitioner. Doc. 13-2 at
28.  The Superior Court affirmed the trial court on January 4,
2000.  Doc. 13-2 at 34-43.  Petitioner, still represented by the
same attorney, then filed a petition for allowance of appeal
("PAA") with the State Supreme Court.  Again, the sole issue
presented was whether the evidence was sufficient to support the
verdicts.  Doc. 13 at 5.  The State Supreme Court denied the PAA
on May 2, 2000. Doc. 13 at 11.  Petitioner did not file a
certiorari petition with the United States Supreme Court.  Doc.
13-1 at 9.

Petitioner filed nothing more until January 5, 2001, when he
filed his pro se PCRA petition.  The trial judge assigned to the
case was the same trial judge who presided over Petitioner's two
trials.  Counsel was appointed and an amended PCRA petition was
filed.  In that amended PCRA petition the following issues were
raised:

> THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF
> COUNSEL WHEN TRIAL COUNSEL FAILED TO MOVE THIS
> HONORABLE COURT TO BAR HIS RETRIAL ON THE GROUNDS THAT
> THE DEFENDANT'S RETRIAL VIOLATED THE DEFENDANT'S RIGHTS
> AS GUARANTEED BY THE PENNSYLVANIA CONSTITUTION AND THE
> UNITED STATES CONSTITUTION AGAINST DOUBLE JEOPARDY.

4

Doc. 13-3 at 20, ¶ 24.

     TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO SUBPOENA
     AND PRESENT CERTAIN DEFENSE WITNESSES AT TRIAL.

Doc. 13-3 at 25.

The PCRA Court denied relief.  New counsel was appointed and the

sole issue raised on appeal to the Superior Court was:

     Was PCRA counsel ineffective for failing to provide
     appellant with a meaningful opportunity to obtain
     review of issues regarding performance of prior counsel
     where PCRA counsel failed to attach certified
     statements of witnesses in support of appellant's post
     conviction claims which resulted in the dismissal of
     appellant's petition pursuant to 42 Pa.C.S.A. §
     9545(d)?

Doc. 13-4 at 2.   The Superior Court affirmed the denial of PCRA

relief.  Doc. 13-4 at 18-22.  Petitioner then filed, through the

same counsel who represented him before the Superior Court, a PAA

to the State Supreme Court.  The sole issue raised in the PAA

was:

     THE SUPERIOR COURT ERRED WHEN IT AFFIRMED THE ORDER OF
     THE TRIAL COURT DISMISSING PETITIONER'S AMENDED
     PETITION FOR POST-CONVICTION RELIEF WITHOUT AN
     EVIDENTIARY HEARING BECAUSE THE PETITIONER'S PCRA
     COUNSEL WAS INEFFECTIVE FOR FAILING TO ATTACH CERTIFIED
     STATEMENTS TO PETITIONER'S AMENDED PETITION AND THEREBY
     DENYIED [sic] PETITIONER A MEANINGFUL OPPORTUNITY TO
     OBTAIN A REVIEW OF THE ISSUES RAISED IN SAID PETITION
     PURSUANT TO 42 Pa.C.S.A. 9545(d).

Doc. 13-4 t 24.  The Pennsylvania Supreme Court denied the PAA,

without opinion on August 27, 2004.

    Petitioner did not file his present habeas petition until

nearly one full year later on August 9, 2006.  Respondents filed

an answer, in which they raised both the AEDPA statute of
limitations and procedural default.  Petitioner then filed a
traverse.

**B.  Applicable Legal Principles**

The Antiterrorism and Effective Death Penalty Act of 1996,
Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended
the standards for reviewing state court judgments in federal
habeas petitions filed under 28 U.S.C. § 2254 was enacted on
April 24, 1996.  Because Petitioner's habeas petition was filed
after its effective date, AEDPA is applicable to this case.
Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000), cert. denied,
532 U.S. 980 (2001).

Respondents pointed out in their answer that this petition
is untimely under AEDPA.  As relevant here,[1] AEDPA requires that
state prisoners file their federal habeas petition within one
year after their conviction became final.  Specifically, AEDPA
provides that:

> (d)(1) A 1-year period of limitation shall
> apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation
> period shall run from the latest of--
>    (A) the date on which the judgment became
> final by the conclusion of direct review or

---

[1]  Although AEDPA provides three other potential starting
points for the running of its one year limitations period,
Petitioner has not argued for the application of any of those
three other starting points and, indeed, from the record, none
appear to be applicable.

the expiration of the time for seeking such
review;

. . . .

(2) The time during which a properly filed
application for State post- conviction or
other collateral review with respect to the
pertinent judgment or claim is pending shall
not be counted toward any period of
limitation under this subsection.

28 U.S.C. § 2244(d).

A habeas respondent has the burden of affirmatively pleading
AEDPA's statute of limitations.  Hill v. Braxton, 277 F.3d 701,
705 (4th Cir. 2002).  However, it is appropriate  -where the
habeas petitioner has been put on notice of a statute of
limitations defense-  to place some burden on him or her to show
that some other date, other than the date on which the conviction
became final, should be used as the onset date of a limitations
period. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir.
2002) ("once a petitioner is given adequate notice and
opportunity to respond to allegations that his petition is
subject to dismissal pursuant to AEDPA's statute of limitations,
petitioner has the burden of providing an adequate response")
(citing, Herbst v. Cook, 260 F.3d 1039, 1041-42 (9th Cir. 2001)).
See also Jackson v. Secretary for Dept. of Corrections, 292 F.3d
1347, 1349 (11th Cir. 2002); Robinson v. Johnson, 313 F.3d 128,
134 (3d Cir. 2002)("The purpose of requiring the defendant to
plead available affirmative defenses in his answer is to avoid

7

surprise and undue prejudice by providing the plaintiff with
notice and the opportunity to demonstrate why the affirmative
defense should not succeed."). Because Petitioner did not argue
the application of any date other than the date the conviction
became final, nor for any equitable tolling, and so has waived
those arguments,[2] the court will utilize the date the conviction
became final as the relevant basis of analysis.

In Acosta v. Artuz, 221 F.3d 117, 123 (2d Cir. 2000), the
Court of Appeals for the Second Circuit explained the very
important values that AEDPA's statute of limitations serves.  In
Acosta, the Court of Appeals stated that

> The statute of limitation in Section 2244(d) "was
> Congress' primary vehicle for streamlining the
> habeas review process and lending finality to
> state convictions." *Walker v. Artuz*, 208 F.3d 357,
> 361 (2d Cir.2000); *cf. Schlup v. Delo*, 513 U.S.
> 298, 322 (1995) (stating that on collateral
> review, courts should "accommodate [ ] ... the
> systemic interests in finality ... and
> conservation of judicial resources"). The AEDPA
> statute of limitation promotes judicial efficiency
> and  conservation of judicial resources,
> safeguards the accuracy of state court judgments
> by requiring resolution of constitutional
> questions while the record is fresh, and lends
> finality to state court judgments within a

---

[2]    See, e.g., United States v. Becerra, 164 F.3d 631
(Table, Text available in Westlaw) (9th Cir. 1998)("In his
traverse brief before the district court, Becerra argued that the
alleged sentencing error was constitutional in nature because it
denied his rights under the Due Process Clause. Claims raised for
the first time in a traverse brief are waived. See *Cacoperdo v.
Demosthenes*, 37 F.3d 504, 507-08 (9th Cir. 1994)").  Cf. Rhine v.
Boone, 182 F.3d 1153, 1154 (10th Cir. 1999)(petitioner "has
waived that issue by not raising it before this court.").

> reasonable time. Like the other procedural bars to
> habeas review of state court judgments, the
> statute of limitation implicates the interests of
> both the federal and state courts, as well as the
> interests of society[.]

Acosta, 221 F.3d at 123.

**C. Discussion**

**1. The Petition is time barred**

Petitioner's conviction became final 90 days after May 2, 2000, the date whereon the Pennsylvania Supreme Court denied allocatur in his direct appeal from his conviction. See United States Supreme Court Rule 13 (providing that a petition for certiorari must be filed no later than 90 days after entry of an order denying discretionary review by the state court of last resort); Stokes v. District Attorney of Philadelphia, 247 F.3d 539, 542 (3d Cir. 2001)(explaining that AEDPA's phrase "became final by ... expiration of time for seeking [direct] ... review" includes the 90 days time in which to seek certiorari); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999). In counting this 90 day time period, the court follows Fed.R.Civ.P. 6[3] and concludes

---

[3]  Fed.R.Civ.P. 6 provides in relevant part that

In computing any period of time prescribed or allowed
by these rules, by the local rules of any district
court, by order of court, or by any applicable statute,
the day of the act, event, or default from which the
designated period of time begins to run shall not be
included. The last day of the period so computed shall
be included, unless it is a Saturday, a Sunday, or a
legal holiday, or, when the act to be done is the
filing of a paper in court, a day on which weather or

that Petitioner's conviction became final on July 31, 2000.
Hence, AEDPA's one year[4] statute of limitations began to run from
July 31, 2000 and continued to run until January 5, 2001, when
Petitioner filed his pro se PCRA petition in the Allegheny County
Common Pleas Court.  Doc. 13-1 at 3.  Again utilizing
Fed.R.Civ.P. 6, the court calculates that from July 31, 2000 to
January 4, 2001,[5] a total of one-hundred and fifty-seven (157)
days from the 365 days limit ran. Consequently, Petitioner had
only 208 days remaining of AEDPA's limitations period.  That PCRA
petition continued to pend for a portion of August 27, 2004 when
the State Supreme Court denied the PAA.  Doc. 13-4 at 36.  Hence,
AEDPA's statute of limitations began to run again on August 28,

---

other conditions have made the office of the clerk of
the district court inaccessible, in which event the
period runs until the end of the next day which is not
one of the aforementioned days.

[4] For purposes of AEDPA's one year statute of limitations, a
"year" means 365 days.  See Patterson v. Stewart, 251 F.3d 1243,
1247 (9th Cir. 2001); Stokes v. Miller, 216 F.Supp.2d 169
(S.D.N.Y. 2000).

[5] Although, pursuant to Fed. R. Civ. P. 6, the last day of a
time period is to be counted, January 5, 2001, is not to be
counted here because, on that date, Petitioner filed his PCRA
petition and thus as of that date AEDPA's statute of limitations
is tolled, i.e., not counted due to the fact that Petitioner had
a petition for post conviction relief "pending" for at least a
portion of January 5, 2001, within the meaning of 28 U.S.C. §
2244(d)(2).  See Freeman v. Pew, 59 F.2d 1037, 1037 (D.C. Cir.
1932) ("it has long been the settled doctrine that the law,
disregarding fractions, takes the entire day as the unit of
time."); In re Susquehenna Chemical Corp., 81 F.Supp. 1, 9 (W.D.
Pa. 1948)(general rule is that fractions of a day are to be
disregarded), aff'd, 174 F.2d 783 (3d Cir. 1949).

2004 and continued to run until nearly one full year later, i.e., August 9, 2005, when Petitioner finally filed his habeas petition through counsel.  This period of time amounts to three hundred and forty-six (346) days.  Adding the time that had run previously, i.e., 157 days between his conviction becoming final and his filing of the PCRA petition to these 346 days yields a result of five hundred and three (503) days or more than one-hundred and thirty-eight (138) days beyond the one year statute of limitations.  Hence, his petition is untimely and should be dismissed as such.[6]

### 2.  Procedural default

The Respondents also point out that Petitioner has procedurally defaulted both of his claims.  Respondents point out that he procedurally defaulted his ineffectiveness claim concerning double jeopardy because he failed to raise it in his brief to the Superior Court on appeal from the PCRA court's denial of relief.  They also point out that Petitioner procedurally defaulted his ineffective assistance of all prior counsel claim for the counsels' failure to raise the allegedly unconstitutional jury instruction because Petitioner never raised this issue in the state courts.  Respondents are correct.

---

[6]  Petitioner does raise an argument that it would be a miscarriage of justice for AEDPA's time bar to prevent a review of his claims on the merits.  This argument will be addressed below in conjunction with his same argument against procedural default.

11

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court.  See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes).  The Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief." Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by* Caswell v. Ryan, 953 F.2d 853 (3d Cir.1992).  See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state

procedural rule is "adequate" and "independent." <u>Coleman v.
Thompson</u>, 501 U.S. 722, 750 (1991).  A state rule of procedure is
"adequate" if it is firmly established and applied with some
consistency.  <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir. 1996)
("A state rule is adequate only if it is 'consistently and
regularly applied.' *Johnson v. Mississippi*, 486 U.S. 578, 587
(1988); *see also  Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)
(state procedural rule must be 'firmly established and regularly
followed' to bar federal habeas review).").  Moreover, when
performing a "firmly established and regularly followed"
analysis, federal habeas courts look to the time when the alleged
failure by the petitioner to comply with state law occurred to
determine if, at that time, the state rule of procedure was
firmly established and regularly followed.  See <u>Doctor v.
Walters</u>, 96 F.3d at 684 ("We must decide whether [the fugitive
forfeiture rule] was firmly established and regularly applied,
not in 1993 when the [state] Supreme Court relied on it, but
rather as of the date of the waiver that allegedly occurred when
Doctor escaped in 1986").  A state rule of procedure is
"independent" if it does not depend for its resolution on
answering any federal constitutional question.  <u>Ake v. Oklahoma</u>,
470 U.S. 68, 75 (1985) ("when resolution of the state procedural
law question depends on a federal constitutional ruling, the
state-law prong of the court's holding is not independent of

13

federal law . . . .").

There are two exceptions to the procedural default doctrine. A federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes.   In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' Murray v. Carrier, 477 U.S. 478, 488 (1986)."   Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996).   In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . .   This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted).   The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice."   In Werts v. Vaughn, the Court explained this exception as follows:

> if the petitioner fails to demonstrate cause
> and prejudice for the default, the federal
> habeas court may still review an otherwise
> procedurally defaulted claim upon a showing
> that failure to review the federal habeas
> claim will result in a "miscarriage of

> justice."  Generally, this exception will
> apply only in extraordinary cases, i.e.,
> "where a constitutional violation has
> probably resulted in the conviction of one
> who is actually innocent...." [*Murray v.
> Carrier*, 477 U.S. 478] at 496 [(1986)].
> Thus, to establish a miscarriage of justice,
> the petitioner must prove that it is more
> likely than not that no reasonable juror
> would have convicted him. *Schlup v. Delo*, 513
> U.S. 298, 326 (1995).

Id.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995)(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice.  See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, *2 (7th Cir. 1998);

Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164,
*4 (9th Cir. 1999), cert. denied, 529 U.S. 1091 (2000); McNary v.
Farley, 16 F.3d 1225 (Table), 1994 WL 59278, **3 (7th Cir. 1994);
Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, *3
(10th Cir. 1993).

**(a) Double Jeopardy claim and Procedural Default**

One procedural default Petitioner engaged in was his failure
to raise, in his brief on appeal to the Superior Court, the issue
of ineffectiveness of trial counsel for failing to raise the
double jeopardy bar.   See Doc. 13-4 at 1-17 (Brief to Superior
Court).   In its memorandum opinion the Superior Court found this
issue to have been waived, i.e., abandoned. Doc. 13-4 at 19-20
n.1, Superior Court slip op. ("As the double jeopardy argument
was not briefed before us, we find that it has been abandoned on
this appeal.").

As the Superior court's ruling confirms, such failures to
raise the issue on appeal constitute waiver under the law of the
state.   See Pa. R.A.P. No. 2116(a) (issue must be presented in
the Statement of Questions section of brief to be considered);
Sistrunk v. Vaughn, 96 F.3d at 671 n.4 ("the rules [of
Pennsylvania's appellate procedure] dictate that an issue raised
at the trial level but not preserved on appeal will not be
considered by any subsequent appellate court.").   Because this
rule of waiver was consistently applied, at least since 1992 and

thereafter up to the time Petitioner filed his appeal brief in the Superior Court, i.e., October 29, 2003,[7] it constitutes an "adequate" state procedural rule for purposes of procedural default. Thomas v. Elash, 781 A.2d 170, 176-77(Pa. Super. 2001) ("Although Appellant may have preserved the issues raised in his post trial motions by mailing the motions within 10 days of the verdict, he has now waived those issues by failing to include them in his brief to this Court. . . .  Having failed to properly raise and address the issues in his brief, Appellant has precluded our review of his substantive claims."); Pelzer v. Vaughn, No. Civ.A.  92-0091, 1992 WL 95915, at *5 (E.D. Pa. April 16, 1992) ("If an issue has once been raised [in the state court of first instance], but was not pursued to the higher courts, it is deemed waived, and further litigation on that issue will not be heard [in a federal habeas court] unless a petitioner can demonstrate cause and actual prejudice, or show that failure to consider the claims would result in a fundamental miscarriage of justice."); Terry v. Gillis, 93 F.Supp.2d 603, 611 (E.D. Pa. 2000)("Thus, because plaintiff failed to present both his claim regarding the jury charge and his claim that counsel was ineffective for not objecting to that charge to the Pennsylvania Superior Court and the Pennsylvania Supreme Court, his claims are procedurally defaulted"); Diventura v. Stepniak, No. 95-CV-0443,

---

[7]  Doc. 13-4 at 1 (date stamped copy of brief).

1996 WL 107852, at *3 (E.D. Pa. March 11, 1996).[8]

Moreover, Pennsylvania's rule of waiver for failing to raise an issue on appeal is "independent" of any federal law question. See, e.g., Diventura v. Stepniak, 1996 WL 107852, at *3 (finding state court's application of the waiver rule to be "independent" of federal law).   Hence, Petitioner's waiver under state law

_____

[8] As Petitioner notes, in an alternative holding, the Superior Court did address Petitioner's ineffectiveness claim regarding the double jeopardy issue on the merits.  Superior Court slip op., Doc. 13-4 at 20 n.1 ("Also, . . . we agree this claim is without merit in any event because there is no evidence that the District Attorney intentionally caused a mistrial."). Petitioner speculates that the Superior Court's addressing of the merits in an alternative holding was pursuant to "somewhat haphazardly applied 'relaxed waiver' rule." Doc. 16 at 5. Perhaps, Petitioner is attempting to question whether Pennsylvania's waiver rule is adequate.  As this court understands Pennsylvania's formerly applied "relaxed waiver" rule, it was a rule applied only in capital cases, i.e., cases where the defendant/appellant was sentenced to death. See, e.g., Commonwealth v. Natividad, 773 A.2d 167, 178 (Pa. 2001)("under our doctrine of relaxed waiver, **applicable only** in direct appeals of capital cases . . .")(emphasis added), *abrogated by*, Commonwealth v. Freeman, 827 A.2d 385 (Pa. 2003)(holding that relaxed waiver will no longer be applied even to capital cases on direct review, as opposed to post conviction collateral review). Moreover, the Pennsylvania Supreme Court announced as early as November 23, 1998, that the relaxed waiver rule would not apply to capital proceedings in post conviction collateral review. Commonwealth v. Albrecht, 720 A.2d 693 (Pa.  1998).  Hence, any relaxed waiver rule, which was applicable only to capital cases, does not render Pennsylvania's waiver rule in non-capital cases, such as this one, inadequate for purposes of the procedural default doctrine.  See, e.g., Peterson v. Brennan, No. Civ.A. 97-3477, 2004 WL 1505253, *7 (E.D. Pa. June 15, 2004)("While the Court is aware of the Pennsylvania courts' past practice of relaxing state procedural rules in death penalty cases, referred to as the 'relaxed waiver rule,' . . . petitioner does not cite any cases in which the relaxed waiver rule was applied in a noncapital case").

constitutes a procedural default for purposes of seeking federal habeas relief.[9]

Petitioner has not argued cause and prejudice and so the issue is waived.  Even if not waived, Petitioner would have no cause because the only claim of cause he would have is the ineffectiveness of his PCRA appeals counsel for failing to preserve this issue and since there is no federal constitutional right to counsel at that stage, ineffectiveness of counsel cannot serve as cause to excuse a procedural default. <u>Coleman v. Thompson</u>, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas.");  <u>Hull v. Freeman</u>, 991 F.2d 86, 91 (3d Cir. 1993) ("Under <u>Coleman</u>, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").

---

[9]   Because Petitioner **never** raised in the state courts, the issue of all prior counsels' ineffectiveness for not raising the alleged defective jury instructions, the above reasoning with respect to waiver for failing to raise an issue on appeal, applies equally to this issue, which was never raised at any stage in the state proceedings. Hence, there are multiple waivers that Petitioner made of the jury instruction issue.  The only cognizable issue now would be his PCRA counsels' alleged ineffectiveness for failing to raise the jury instruction issue but as explained in the text immediately following after this footnote, such alleged ineffectiveness cannot serve as cause to excuse the procedural default.

Petitioner also seems to make the argument that because the
Superior Court then went onto address the double jeopardy issue
on the merits, in an alternative holding, Petitioner's
procedural default somehow was forgiven and this court is
therefore duty bound to address the issue on the merits likewise.
Doc. 16 at 5.  Petitioner is wrong.  <u>See</u>, <u>e.g.</u>, <u>Harris v. Reed</u>,
489 U.S. 255, 264 n. 10 (1989)("a state court need not fear
reaching the merits of a federal claim in an alternative holding.
By its very definition, the adequate and independent state ground
[i.e., the procedural default] doctrine requires the federal
court to honor a state holding that is a sufficient basis for the
state court's judgment, even when the state court also relies on
federal law."); <u>Johnson v. Pinchak</u>, 392 F.3d 551, 558 (3d Cir.
2004).

As a final argument, Petitioner does appear to invoke the
second exception to procedural default doctrine, namely, the
fundamental miscarriage of justice exception.  Doc. 16 at 4.

The phrase "miscarriage of justice" has been explained by
the Supreme Court to require a showing that "a constitutional
violation has probably resulted in the conviction of one who is
actually innocent."  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995);[10]

---

[10]   The Supreme Court in <u>Schlup</u> explained that an actual
innocence claim in the context of seeking to have a procedural
default "forgiven" so as to have the procedurally defaulted
claims reviewed on the merits is a "gateway" claim.  In other
words, the claim of actual innocence in the <u>Schlup</u> context is **not**

United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'").  Moreover, "actually innocent" means factual innocence and not just legal innocence. Calderon v. Thompson, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence" a petitioner must

> satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), cert. denied, 122 S.Ct. 372 (2001).  It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.  In Schlup, the Supreme Court reiterated that "[t]he meaning of

---

a claim that because I am actually innocent by virtue of that fact alone I am entitled to federal habeas relief but rather is a claim that contends because I am actually innocent, the federal habeas court should forgive my procedural default in the state courts and consider my procedurally defaulted claims on their merits.  Schlup, 513 U.S. at 315.

actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." <u>Schlup</u>, 513 U.S. at 329.

The first prong of the two part test, i.e., whether the proffered evidence is new, provides that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." <u>Amrine v. Bowersox</u>, 238 F.3d at 1028.  Petitioner's claim of actual innocence flounders on this ground.  Petitioner does not suggest that any new evidence exists, nor does he make a proffer of any new evidence of his innocence.[11]

### (b) Miscarriage of Justice and AEDPA's time bar

In a similar vein, Petitioner argues that this court's reliance on AEDPA's time bar to refuse to address his claims on the merits would produce a miscarriage of justice.  Petitioner argues that "it would work a fundamental miscarriage of justice if they [i.e., the AEDPA statute of limitations and the

---

[11]   There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." <u>See</u>, <u>e.g.</u>, <u>United States v. Garth</u>, 188 F.3d 99 (3rd Cir. 1999).  However, for reasons explained in <u>Sweger v. Chesney</u>, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and <u>Gale v. Rozum</u>, 2006 WL 2092572 (M.D.Pa. July 25, 2006) the narrow <u>Garth</u> exception does not apply here. Whereas in <u>Garth</u> a subsequent interpretation of a criminal statute by the United States Supreme Court may have rendered the petitioner therein not guilty of the crime, no such factual scenario is present here.

procedural default doctrine] prevented merits review of"
Petitioner's claims. Doc. 16 at 4.  Without explanation of the
phrase "fundamental miscarriage of justice" or citation to
authority, it is not clear what Petitioner means.  However, the
court understands Petitioner to be invoking the standard and test
announced in Schlup.

     Petitioner does not cite any authority for the proposition
that there even exists a "fundamental miscarriage of justice"
exception to AEDPA's statute of limitations.  Indeed, Courts have
held that there is no such  exception.  Araujo v. Chandler, 435
F.3d 678 (7th Cir. 2005); David v. Hall, 318 F.3d 343 (1st Cir.
2003); Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002).
Although helpful to Petitioner, but not cited by Petitioner,
there are other courts who hold to the contrary.  See, e.g.,
Souter v. Jones, 395 F.3d 577, 601 (6th Cir. 2005)("Finally, we
conclude that constitutional concerns counsel in favor of
upholding equitable tolling based on a credible claim of actual
innocence. Several courts have recognized that denying federal
habeas relief from one who is actually innocent would be
constitutionally problematic."); Gibson v. Klinger, 232 F.3d 799,
808 (10th Cir. 2000)("There may be circumstances where the
limitation period at least raises serious constitutional
questions and possibly renders the habeas remedy inadequate and
ineffective.")(citing, Miller v. Marr, 141 F.3d 976, 978 (10th

Cir. 1998)).  However, this court finds the cases creating such
an exception singularly unpersuasive as they all assume that if
there were not such an exception, then grave constitutional
issues about the suspension of the writ would arise.  These
courts do so without even citation to or acknowledging the
holdings of Ex parte Bollman, 8 U.S. (4 Cranch) 75 (1807)(state
prisoners have no federal habeas corpus right unless Congress
creates one); Ex parte Dorr, 44 U.S. (3 How.) 103, 105 (1845)(the
Court ruled that "neither this nor any other court of the United
States, or judge thereof, can issue a [writ of] habeas corpus to
bring up a prisoner, who is in custody under a sentence of
execution of a state court, for any other purpose than to be used
as a witness."). In light of these two Supreme Court cases, never
overruled, this court is not sure that any provision of the
United States constitution requires an actual innocence exception
to AEDPA's statute of limitations given that state prisoners may
not have a **constitutional** right to have federal courts issue
writs of habeas corpus relieving them of custody based on state
court convictions.  If there is no federal constitutional right
of a state prisoner to a federal writ of habeas corpus, then
placing a time limitation on access to such a non constitutional
right would not seem to violate the constitution.

However, even if there were such an actual innocence
exception, the standards for making a showing of such actual

24

innocence should be at least as stringent as the standards under
Schlup v. Delo, 513 U.S. 298 (1995) for excusing a procedural
default.  See, e.g., United States v. Stubbs, 229 F.3d 1165
(Table) 2000 WL 1174656 (10th Cir. 2000) (unpublished) (applying
Schlup standard to actual innocence claim so as to overlook
failure to comply with AEDPA's statute of limitations); Lucidore
v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir.
2000), cert. denied, 531 U.S. 873 (2000)(same).  As demonstrated
above in addressing the procedural default issue, Petitioner has
utterly failed to make any showing of actual innocence under the
Schlup standard.  Accordingly, even if there were an actual
innocence exception to AEDPA's statute of limitations, Petitioner
has not met it.

Lastly, Petitioner suggests that because his claims are
meritorious, for that reason alone, his claims should be
addressed on the merits notwithstanding the fundamental interests
that the doctrine of procedural default serves[12] and AEDPA's time
bar serves. See Doc. 16 at 5-6.  The simple answer to this was
provided by the Supreme Court itself when it declared that
"[w]ithout any new evidence of innocence, even the existence of a
**concededly meritorious constitutional violation** is not in itself
sufficient to establish a miscarriage of justice that would allow

---

[12]  See, e.g., Coleman v. Thompson, 501 U.S. 722 (1991)
recounting the important interests in comity, federalism,
finality etc. that the procedural default doctrine serves.

a habeas court to reach the merits of a barred claim." Schlup, 513 U.S. at 316 (emphasis added).  Bound as we are by Schlup, Petitioner's claims cannot be addressed on the merits.

**D. Certificate of Appealability**

A certificate of appealability (COA) should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  There is a difficulty with this provision when the District Court does not decide the case on the merits but decides the case on a procedural ground without determining whether there has been a denial of a constitutional right.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000).  In Slack v. McDaniel, the Supreme Court held that "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 478.  Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed

26

at the district court's procedural holding." <u>Id</u>. at 484-85.  The test is conjunctive and both prongs must be met.  <u>See</u> <u>Walker v. Government of the Virgin Islands</u>, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the petition for procedural default and/or for being untimely under AEDPA was correct.  Accordingly, a certificate of appealability should be denied.  Because of this conclusion, the court does not need to reach the other prong of the <u>Slack v. McDaniel</u> test, i.e., whether petitioner has made a substantial showing of a denial of a constitutional right.

**<u>CONCLUSION</u>**

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

<u>/s/Lisa Pupo Lenihan</u>
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: September 19, 2006

```
cc:  The Honorable Gary L. Lancaster
     United States District Judge

     Caroline M. Roberto
     Law & Finance Building
     5th Floor
     Pittsburgh, PA 15219

     Rusheen R. Pettit
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219
```