IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LEON GODFREY,                          )
                                       )    Civil Action No. 05-1106
                Petitioner             )
                                       )
        vs.                            )    Judge Gary L. Lancaster/
                                       )    Magistrate Judge Lisa
GEORGE N. PATRICK, Superintendent      )    Pupo Lenihan
of the State Correctional              )
Institution at Houtzdale, JEFFREY      )
BEARD, Secretary, Pennsylvania         )
Department of Corrections, and         )
THE ATTORNEY GENERAL OF                )
PENNSYLVANIA, and THE DISTRICT         )
ATTORNEY OF ALLEGHENY COUNTY,          )
                                       )
                Respondents            )
                                       )

## MEMORANDUM ORDER

The above-captioned Petition was received by the Clerk of
Court on August 9, 2005, and was referred to United States
Magistrate Judge Lisa Pupo Lenihan for pretrial proceedings in
accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and
Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

The magistrate judge's Report and Recommendation (Doc. No.
17), filed on September 19, 2006, recommended that the Petition
for Writ of Habeas Corpus be dismissed as untimely and/or as
procedurally defaulted, and that a certificate of appealability
be denied.  Service was made on the Petitioner's counsel of
record, and on counsel of record for the Respondents via
electronic notification.  The parties were informed that in
accordance with the Magistrates Act, 28 U.S.C.§ 636(b)(1)(B) and

(C), and Rule 72.1.4(B) of the Local Rules for Magistrates, that they had ten (10) days to file any objections. No objections were filed within the time permitted and this court entered an order adopting the report and recommendation. Doc. 19. Subsequently, Petitioner's counsel filed a nunc pro tunc motion for enlargement of time in which to file objections, Doc. 20, representing in that motion that due to the fault of a secretary, the objections were not filed timely. The Court granted the motion for enlargement of time. Doc. 21. Thereafter, Petitioner's counsel filed objections. Doc. 22.

Petitioner's first objection is that the ineffectiveness claim based on counsel's failure to object to the second trial was not procedurally defaulted. It was clearly procedurally defaulted as the Superior Court itself noted "[a]s the double jeopardy argument was not briefed before us, we find that it [has] been abandoned on appeal." Doc. 13-4 at 19-20, Superior Court Slip op. at 2-3 n.1.

Petitioner's second objection mainly concerns the report's conclusion that Petitioner procedurally defaulted his claims and that he failed to show a "miscarriage of justice" within the meaning of Schlup v. Delo, 513 U.S. 298 (1995) and its predecessors Sawyer v. Whitley, 505 U.S. 333,, reh'g denied, 505 U.S. 1244 (1992) and Murray v. Carrier, 477 U.S. 478 (1986). The report concluded that Petitioner failed to show a miscarriage of

2

justice because Petitioner offered no new evidence of his
innocence as required, Doc. 17 at 20-22, and that he did not fit
within the second category wherein a miscarriage of justice is
proven when a subsequent change in the interpretation of a
criminal statute renders what was held to be criminal within the
original interpretation of the statute no longer criminal.  Doc.
17 at 22 n.11.

     Petitioner's counsel does not argue that Petitioner comes
within either of these two categories for establishing a
miscarriage of justice.  Rather, Petitioner's counsel argues that
the report interprets the Schlup miscarriage of justice standard
"far too narrowly," Doc. 22 at 5, and that there are more than
just two categories for establishing a miscarriage of justice
within the contemplation of Schlup.  Doc. 22 at 5-7.  Petitioner
relies principally on the case of Washington v. James, 996 F.2d
1442, 1450 (2d Cir. 1993) for the proposition that there are more
than just two ways of showing a miscarriage of justice under
Schlup for overlooking a procedural default.

     The court is not convinced.  Washington v. James does not
stand for the broad proposition that there are more than two ways
to prove a miscarriage of justice under Schlup for overlooking a
procedural default.  Rather, Washington asked and answered the
following question: when is it appropriate for a federal habeas
court to sua sponte raise the defense of procedural default where

                                3

the state has waived the defense. The Court determined that there are several instances when a federal habeas court may not do so and one of those instances occur when it would constitute a "miscarriage of justice" for the court to sua sponte raise the issue. In defining the term "miscarriage of justice" in this context, the Washington Court provided a broader definition than the Schlup Court provided in the different context of defining a "miscarriage of justice" for purposes of a habeas petitioner overcoming a procedural default.

In seeking guidance as to when a federal habeas court should and should not raise the issue of procedural default sua sponte, notwithstanding the state's erroneous concession that no procedural default occurred, the Second Circuit Court looked to the Supreme Court's decision in Granberry v. Greer, 481 U.S. 129 (1987) which addressed the issue of when a federal habeas court should sua sponte raise the issue of exhaustion where the state waived the issue by not raising it in the District Court but raised it for the first time on appeal in the Circuit. The Second Circuit Court interpreted Granberry to permit a federal habeas court to sua sponte raise and rely on the procedural default doctrine in refusing to address a claim on the merits

4

except in limited instances.[1]   The Second Circuit went on to
opine that there are two categories that may be properly labeled
"miscarriages of justice **in this context**" Washington, 996 F.2d at
1450 (emphasis added), *i.e.*, in the context of determining
whether a waived defense should be raised sua sponte and relied
on by the federal habeas court.   Those two categories are 1)
where the alleged violation of federal rights challenges the
validity of the trial itself,(i.e. a violation of the Double
Jeopardy clause); and 2) where the violation of federal rights
was motivated by malice and not caused by mere inadvertence or
poor judgment.   Washington, 996 F.2d at 1450. Petitioner's
counsel asserts that Petitioner comes within both categories
because he raises a double jeopardy claim and he raises a
prosecutorial misconduct claim. Doc. 22 at 7.

It is clear to this Court from the Washington opinion that
by the Court's use of the phrase, "miscarriage of justice," in

---

[1] Specifically, the Second Circuit concluded that there were
four instances and held:

> that the principles of comity and federalism dictate
> that we raise the defense [sua sponte] except in four
> circumstances: (1) where comity and federalism are not
> implicated or where they are better served by reaching
> the merits; (2) where the state is itself at fault for
> the procedural default; (3) where the alleged federal
> violation challenges the validity of the state trial
> itself; or (4) where the alleged federal violation was
> motivated by malice.

Washington v. James, 996 F.2d at 1451.

the context of determining when a federal habeas court should sua

sponte raise the procedural default issue, the Court did not

intend to change or alter or define the meaning of the phrase

"miscarriage of justice" within the contemplation of Schlup in

determining whether a habeas petitioner's procedural default that

was raised as a defense by the state should be overlooked.   The

Washington court made this abundantly clear when it declared that

> If we were to interpret "miscarriage of justice" in
> this context [i.e., when deciding whether to sua sponte
> raise the procedural default defense] along the same
> lines as the Supreme Court's interpretation in *Sawyer*
> ("actual innocence") [and Sclup], the exception would
> be redundant:  in procedural default cases a
> miscarriage of justice as defined in *Sawyer* permits a
> federal habeas court to reach the merits whether or not
> the government has raised the defense.   However, we
> are persuaded that in this context "miscarriage of
> justice" is meant more liberally than in the *Sawyer*
> context.

Washington, 996 F.2d at 1449-50. See also Spence v.

Superintendent, Great Meadow Correctional Facility, 219 F.3d 162,

173 (2d Cir. 2000)("We have ruled that the 'miscarriage of

justice' exception in the *Granberry* context should be construed

more liberally than in *Sawyer*. *See Washington*, 996 F.2d at

1450").

Instantly, the Magistrate Judge's report properly required

Petitioner to show a miscarriage of justice within the meaning of

6

Schlup and Sawyer.  Hence, the "more liberal[]"[2] standard of a
"miscarriage of justice," in the context of determining whether
to sua sponte raise a procedural default defense where the
default was waived by the state, which Petitioner invokes herein,
simply has no application in this context where the more
demanding standard of "miscarriage of justice" under Schlup
applies for determining whether the Petitioner's procedural
default that has been raised by the state should be overlooked
and, consequently, whether Petitioner's claims should be
addressed on the merits.

Accordingly, this Court holds that the other two categories
which Petitioner insists are within the Schlup standard of
"miscarriage of justice" are not, and therefore the Magistrate
Judge did not err in too narrowly defining the "miscarriage of
justice" standard and in  applying that narrow standard to
Petitioner, requiring that he show either new evidence of
innocence or an intervening construction of the criminal statutes
under which he was charged that rendered what was formally
considered to fall within the ambit of the statute to no longer
fall within its ambit.[3]  Accordingly this objection is without

---

[2]  Washington, 996 F.2d at 1450.

[3]  To the extent that the case of Clouden v. Phillips, 2006
WL 163222, *4 (E.D.N.Y. Jan. 20, 2006), another case cited by
Petitioner, is contrary to the above analysis with respect to the
meaning of Washington, the court finds it unpersuasive.

merit.

Petitioner's third objection is that there should be a
miscarriage of justice exception to the AEDPA statute of
limitations. The Report correctly concluded that such an
exception may not be constitutionally required contrary to
Petitioner's contention. The Report also correctly concluded
that if such a miscarriage of justice exception applies, then it
is the Schlup standard for a miscarriage of justice that applies.
Given the above analysis addressing the second objection, this
court finds that the more demanding Schlup standard applies and
that Petitioner does not meet that standard.

Petitioner also suggests that the AEDPA statute of
limitations should be equitably tolled considering the alleged
meritoriousness of his claims. Doc. 22 at 7 ("While it [the
habeas petition] is late, it is apparent that petitioner did not
sit idly by and watch his rights evaporate, but rather he ran
through several ineffective counsel through no fault of his own
before current counsel could be retained and file the
petition."). Conspicuously absent from the argument for
equitable tolling is any statement as to why Petitioner waited
from May 2000 until January 2001 to file his pro se PCRA
petition, and/or when Petitioner first contacted present counsel
regarding this habeas case, see, e.g., Hizbullahankhamon, v.
Walker, 255 F.3d 65, 75 (2d Cir. 2001) ("To equitably toll the

8

one-year limitations period, a petitioner "must show that
extraordinary circumstances prevented him from filing his
petition on time," and he "must have acted with reasonable
diligence throughout the period he seeks to toll." ), or when
present counsel was retained, and how long it was from the time
Petitioner retained present counsel to the time counsel actually
filed the petition.    See, e.g., Coleman v. Thompson, 501 U.S.
722, 753 (1991)("[a]ttorney ignorance or inadvertence is not
'cause' because the attorney is the petitioner's agent when
acting, or failing to act, in furtherance of the litigation, and
the petitioner must 'bear the risk of attorney error.'");
Harrison v. General Motors Corp., 275 F.3d 47 (5th Cir.
2001)(Table, unpublished), 2001 WL 1268765, *1  ("Harrison
'cannot rely upon *any* failure on the part of [her] chosen
attorney as diligence or an excuse for lack of diligence, because
the acts of one's attorney [are] imputed to the client.'").

     In any event, this objection is without merit because,
assuming that the miscarriage of justice exception applies to
AEDPA's time bar, Petitioner has not met the Schlup standard of
miscarriage of justice to "toll" or to escape the consequences of
AEDPA's time bar nor has he otherwise demonstrated the
extraordinary circumstances required so as to justify equitable
tolling.

     The fourth objection need not be specifically addressed

                              9

because it has been adequately answered by the foregoing analysis.

The fifth objection may be addressed summarily. Petitioner contends that a certificate of appealability should be granted because of the apparent split in the Circuits regarding whether there is a miscarriage of justice exception to AEDPA's statute of limitations. However, to be granted a certificate of appealability, not only does he need to show that reasonable jurists could disagree with the procedural ruling that there is no such exception, but Petitioner must also make a substantial showing of the denial of a constitutional right and the substantial showing here must be that he was denied the effective assistance of counsel both with respect to the jury instruction and the double jeopardy issue. Here, he has not made such a showing. On the basis of this record, he fails to make a substantial showing that he could prove prejudice under Strickland with respect to the jury instruction issue. With respect to the double jeopardy issue, he fails to make a substantial showing under both prongs of Strickland. His ineffectiveness claim is based on the failure of counsel to object to the second trial due to double jeopardy concerns. However, this ineffectiveness claim is contingent on Petitioner establishing that the prosecutor deliberately elicited the fact that Petitioner's brother did not testify. This, he has failed

10

to do.  Although Petitioner's counsel weaves a speculative tale
about the forlorn prosecutor seeing his case slip away, and hence
intentionally causing a mistrial, the PCRA court found the facts
to be quite different, finding no intentional misconduct on the
part of the prosecutor.  As between counsel's characterization of
the facts some 9 years after the original trial, and the PCRA
judge's (who was also the trial judge at both the first mistrial
and the second trial) finding that it was clear that the
prosecutor's reference to the lack of testimony from Petitioner's
brother was merely an attempt to explain why some witnesses'
testimony was credible and was not intended to goad a mistrial,
Doc. 13-3 at 37-38, AEDPA requires deference be paid to the PCRA
court's findings.  Hence, given the absence of an intent on the
part of the prosecutor to goad the defense into a mistrial,
Petitioner cannot make a substantial showing of the denial of
effective assistance of counsel given that counsel cannot be
deemed ineffective for failing to raise a meritless claim.  Werts
v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot be
ineffective for failing to raise a meritless claim.").

Even if however, Petitioner had made a substantial showing
of the denial of a constitutional right, he has failed to make a
showing that jurists of reason would disagree with the report's
determination that, assuming the existence of such a miscarriage
of justice exception to the AEDPA time bar, Petitioner has

11

utterly failed to meet the Schlup standard for demonstrating a miscarriage of justice.

After de novo review of the pleadings and the documents in the case, together with the Report and Recommendation, the following order is entered:

**AND NOW,** this $\underline{10}$ day of $\underline{\hspace{1.5cm}}$, 2006;

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. No. 17) of Magistrate Judge Lenihan, dated September 19, 2006, is again adopted as the opinion of the court as supplemented by this memorandum opinion and order.[4]

The Honorable Gary L. Lancaster
United States District Court Judge

---

[4]    One correction need be noted in the report and recommendation. On page 5 of the report, at the bottom of the page, the Magistrate Judge references the fact that Petitioner did not file his present habeas petition until August 9, 200**6.** This is an obvious typographical error as Petitioner filed his habeas petition on August 9, 2005. This typographical error had no impact on the report's analysis. The correct date is referenced on page 11 in the report's time bar analysis.

12

cc: Lisa Pupo Lenihan
    United States Magistrate Judge

    Caroline M. Roberto
    Law & Finance Building
    5th Floor
    Pittsburgh, PA 15219

    Rusheen R. Pettit
    Office of the District Attorney
    401 Allegheny County Courthouse
    Pittsburgh, PA 15219